UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LINNIE RAYMOND                                    CIVIL ACTION

VERSUS                                            NO. 15-5587

HUDSON GROUP and                                  SECTION: R(4)
GINA TREVINO

## ORDER AND REASONS

Defendants New Orleans Air Ventures II and Gina Trevino move the Court to dismiss Count 3 of plaintiff Linnie Raymond's complaint,[1] which alleges that they are liable for intentional infliction of emotional distress in connection with Raymond's termination of employment.[2] Defendants argue that Raymond fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Raymond's allegations that she was "warned" for untimely completing an assignment, "written up" for failing to complete an assignment, and ultimately terminated because of "poor job performance" are not so extreme and outrageous as to state a plausible claim for intentional infliction of emotional distress. Defendants' conduct, as alleged in Raymond's complaint, did not rise to such an extraordinary level of atrocity

---

[1]    R. Doc. 10.

[2]    R. Doc. 1 at 8-9.

or indecency, as required by Louisiana law.   Therefore, the Court grants defendants' motion to dismiss.

## I.   BACKGROUND

Plaintiff Linnie Raymond filed this action following termination of her employment from the Louis Armstrong International Airport in Kenner, Louisiana.[3]   Raymond alleges that defendant New Orleans Air Ventures II was her employer and that defendant Gino Trevino was the general manager of Air Ventures's Kenner location and the person who ultimately fired her.[4]

According to Raymond's allegations, she worked at the airport since 2005.[5]   Raymond alleges that, before Trevino's served as general manager, Raymond and the other Air Ventures employees were allowed "true" lunch breaks, in that they were not required to perform job responsibilities during their breaks.[6]   When Trevino became manager, she required the employees

---

[3]     *Id.* at 1.

[4]     *Id.* at 1-2.   Originally, Raymond named "Hudson Group" as her employer and a defendant in this action.   On January 29, 2016, the Court allowed Raymond to substitute Air Ventures for Hudson Group based on Raymond's representations that Air Ventures was her proper legal employer. R. Docs. 8-9.

[5]     R. Doc. 1 at 2.

[6]     *Id.*

to "remain in the area" during their lunch breaks in the event they were needed to assist a customer, relieve a fellow employee, or other reasons.[7] Trevino also allegedly increased the employees' usual eight-and-one-half-hour shifts, with unpaid half-hour lunches, to ten-hour shifts, with two hours of "break time."[8]   But employees were expected to be "on call" or "on standby" during the two-hour break.[9]

Following this shift change, Raymond began to complain about Trevino's management.   Raymond alleges that before she complained, Trevino gave her a thank-you card, which commented on Raymond's "hard work and dedication."[10]   Raymond alleges that after complaining to Air Ventures's Regional Vice President about Trevino's "scheduling irregularities" and "unfair scheduling," Trevino met with Raymond to discuss her job performance.[11]   At this meeting, Trevino "made vague references" to Raymond's "priorities" not being "in order."

---

[7]      *Id.* at 2-3.

[8]      *Id.* at 3.

[9]      *Id.*

[10]      *Id.* at 4.

[11]      *Id.*

Sometime thereafter, Raymond again complained to the Reginal Vice President—this time, that Trevino was "harass[ing] and retaliat[ing] against [Raymond] for complaining about scheduling."[12]   Raymond also re-urged her complaints about the "scheduling irregularities" directly to Trevino during work meetings.[13]   Raymond then received "an employee warning notice" for failing to timely complete an assignment from the assistant general manager (Trevino's assistant).   Raymond contends she was never given a time frame in which to complete the assignment.[14]   The next day, Raymond emailed the Regional Vice President and Human Resource department to ask that the warning notice be withdrawn.[15]   Approximately two weeks later, Trevino "wr[o]te-up" Raymond for failing to "complet[e] an electronic count."[16]   Raymond contends that because she timely completed the electronic count, she refused to sign the "write-up."[17]   Trevino then "handed [Raymond] termination papers" and told Raymond "she was no

---

[12]     *Id.* at 4.

[13]     *Id.* at 5.

[14]     *Id.*

[15]     *Id.*

[16]     *Id.* at 6.

[17]     *Id.*

longer needed."[18]   The termination papers, which were "already filled in," noted "poor job performance" as the reason for Raymond's termination.[19] Approximately one week later, a member of Air Ventures's Human Resource department contacted Raymond and told her that her termination was "a corporation decision" and "not [Trevino's] fault."[20]

Raymond now sues Air Ventures and Trevino, alleging four causes of action.   In Count 1, Raymond claims she is entitled to overtime pay under the Fair Labor Standards Act.   In Count 2, Raymond claims that she was unlawfully retaliated against under the Fair Labor Standards Act.   In Count 3, Raymond claims that Air Ventures and Trevino intentionally subjected her to severe emotional distress.   In Count 4, Raymond claims that Air Ventures is vicariously liable for Trevino's unlawful conduct.[21]

Air Ventures and Trevino move the Court to dismiss Raymond's claim for intentional infliction of emotional distress.[22]   Defendants argue that accepting all of Raymond's allegations as true, none of defendants' conduct

---

[18]     *Id.*

[19]     *Id.*

[20]     *Id.*

[21]     *Id.* at 7-9.

[22]     R. Doc. 10.

is so extreme or outrageous to state a claim for intentional infliction of emotional distress under Louisiana law.[23]  Raymond argues that defendants' conduct was outrageous because they "falsely accused [her] of poor job performance" and "us[ed] these false allegations as grounds for terminating her."[24]

## II.   DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

---

[23]     *Id.* at 1.

[24]     R. Doc. 11-1 at 4-5.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Iqbal*, 556 U.S. at 678. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

To state a plausible claim for intentional infliction of emotional distress under Louisiana law, a plaintiff must allege:

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1022 (La. 2000) (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)). For the defendant's conduct to be "extreme and outrageous," it must "go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable

in a civilized community." *King v. Phelps Dunbar, LLP*, 743 So. 2d 181, 185-86 (La. 1999) (quoting *White*, 585 So. 2d at 1209). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not suffice. *Id.* at 186.

Here, Raymond alleges that she was privately chastised by Trevino twice and that she received "an employee warning notice" from Trevino's assistant once.[25] According to Raymond's allegations, in her first meeting with Trevino, Trevino only "made vague references" to Raymond's work priorities.[26] During their second meeting, Trevino attempted to give Raymond a "write-up" but later terminated Raymond, telling her that she "was no longer needed." Trevino's "vague references" and other statements regarding Raymond's job performance are far from the "extreme and outrageous" conduct necessary to sustain a claim for intentional infliction of emotional distress. *See id.* Contrary to Raymond's arguments in opposition, based on the allegations of her complaint, these interactions with Trevino were apparently limited to Raymond's purported job performance, and Trevino's conduct was in no way egregious. These allegations are therefore

---

[25] R. Doc. 1 at 4-6.

[26] *Id.* at 4.

insufficient to state a claim for relief.  *See Bertaut v. Folger Coffee Co.*, No. 06-2437, 2006 WL 2513175, at *4 (E.D. La. Aug. 29, 2006) ("[C]onduct in the workplace . . . will rarely be so severe that it will rise to the level of outrageous . . . ." (collecting cases)).  Accordingly, the Court GRANTS defendants' motion to dismiss Count 3 of Raymond's complaint.



New Orleans, Louisiana, this ___13th___ day of May, 2016.



_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE